CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 17 2012

JULIA C. DUDLEY, CLERK
BY:
  DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## Roanoke Division

| | |
|---|---|
| AGAPE MOTORCOACH RETREAT, LLC, STEPHEN J. GREGSON, TRUSTEE AND DEBRA E. GREGSON, TRUSTEE | Civil Action No. 7:10-CV-00369 |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION** |
| GLENDA R. BRINTLE, THOMAS ALLEN BRINTLE, KAREN B. CARTER, TRUSTEES OF THE THOMAS Y. BRINTLE 2006 REVOCABLE TRUST, *and* DAVID VELA, REGIONAL DIRECTOR FOR THE NATIONAL PARK SERVICE, UNITED STATES OF AMERICA, *and* TIMOTHY BRITT BOLEN | By: Hon. James C. Turk Senior United States District Judge |
| Defendants. | |

This matter is before the Court on cross motions for summary judgment. Summary judgment motions have been filed by (1) Plaintiffs, Agape Motorcoach Retreat, LLC, Stephen J. Gregson, Trustee, and Debra E. Gregson, Trustee, (collectively referred to as "Agape"); (2) the United States of America (referred to as the "Government"); and (3) Defendants, Glenda R. Brintle, Thomas Allen Brintle, Karen B. Carter, Trustees of the Thomas Y. Brintle 2006 Revocable Trust and Timothy Britt Bolen, (collectively referred to as the "Brintle and Bolen Defendants"). The Court has also reviewed the parties' subsequent filings, including Agape's consolidated brief in opposition to the Government's motion for summary judgment and in support of its cross motion for summary judgment; the Government's brief in response thereto; and Agape's brief in opposition to the Brintle and Bolen Defendants' consolidated motion for

summary judgment. Oral argument on the motions and cross motions for summary judgment was scheduled for January 25, 2012, but was continued to April 4, 2012. At the April 4 hearing the Court requested supplemental briefing, which the parties have now completed. Also pending before the Court is Agape's motion to exclude consideration of materials, testimony, or evidence not found in the record, which includes a request for attorney's fees, and the Government's response thereto. These matters are now ripe for disposition. In accordance with the following Memorandum Opinion, the Government's motion for summary judgment is **GRANTED**, the Brintle and Bolen Defendants' motion for summary judgment is **GRANTED**, and Agape's motions for summary judgment are **DENIED**. Additionally, Agape's motion to exclude is **DENIED**.

I.   **Background**

The dispute before the Court concerns Agape's alleged easements over land owned by the Brintle and Bolen Defendants, as well as an alleged easement over federally owned land to access to the Blue Ridge Parkway. Agape has sued the Brintle and Bolen Defendants and the Government pursuant to the Quiet Title Act, 28 U.S.C. § 2409a, and has asked this Court "to declare the rights of the Plaintiffs and to quiet title to lands in which the United States of America claims an interest; and upon establishment thereof, to have the title as regards to said easement quieted in them and contemporaneously enjoining all Defendants from interfering with the Plaintiffs' continuous uninterrupted enjoyment in the same." (Dkt. No. 21, at 1-2). The ownership of the land at issue and the creation of the alleged easements and right of access to the Blue Ridge Parkway have complex histories, which are described below.

2

### A. The Agape Parcel, the Brintle Parcel, the Bolen Parcel, and the Blue Ridge Parkway

Agape is the owner of a parcel of land, approximately 20.24 acres, in Carroll County, Virginia ("Agape Parcel").[1] The Agape Parcel does not adjoin the Blue Ridge Parkway, but rather is separated from it by land owned by the Government, Defendant Brintle, and Defendant Bolen. Defendant Brintle owns two parcels of land located to the east and southeast of the Agape Parcel ("Brintle Parcel").[2] Defendant Bolen owns a parcel of land that is directly south of the Agape Parcel ("Bolen Parcel").[3] The Blue Ridge Parkway, owned by the Government, runs to the south of the Brintle and Bolen Parcels.

### B. Creation of the Bolen and Brintle Easements

The Agape Parcel, the Brintle Parcel, and the Bolen Parcel were originally part of a larger tract of land owned by Marcus and Myrtle Bolen ("Original Tract"). The Original Tract was divided on April 4, 1950, when the now Bolen Parcel was deeded to the Bolen's predecessors in title, and the remainder, including what is now the Brintle and Agape Parcels were deeded to the Brintle and Agape predecessors in title, respectively. Each of the two deeds splitting the Original Tract mentioned an easement across the now Bolen Parcel ("Bolen Easement").[4] On April 4, 1972, Brintle and Agape's predecessors in title created an easement along the west edge of the now Brintle Parcel ("Brintle Easement") that went from the now Agape Parcel to the northeastern end of the Bolen Easement. (Dkt. Nos. 32-11, 32-12, 32-16, 32-20). These

---

[1] This parcel is made up of two smaller parcels, identified as Tax ID 128-A-74 and 128-A-40. Agape MotorCoach Retreat, LLC acquired title to both smaller parcels on June 19, 2005. On April 18, 2007, Agape MotorCoach Retreat, LLC conveyed one of the smaller parcels, Tax ID 128-A-40, to the Stephen J. Gregson and Debra E. Gregson, Trustees. When Agape MotorCoach Retreat, LLC deeded Tax ID 128-A-40 to the Trustees it deeded rights in the Bolen and Brintle Easements, discussed below. The Agape Parcel is not land locked as it adjoins a Virginia state road.

[2] Tax ID 128-A-71, 128-A-72, and 128-A-73. Tax ID 128-A-71 represents the portion of land that is the claimed Brintle Easement, discussed in more detail below.

[3] Tax ID 128-A-70.

[4] The deed to David G. Bolen stated "There is however hereby reserved through the above land a right of way from certain land lying behind the same to the public road. Said road is to be along the Parkway right of way." (Dkt. No. 32-6).

3

easements form a continuous path connecting the Agape Parcel to land owned by the Government, on which the Blue Ridge Parkway is constructed.

### C. Creation of the Blue Ridge Parkway and Right of Access Thereto

In 1933, at the recommendation of Virginia Senator Harry Byrd, Sr., U.S. Secretary of the Interior, Harold Ickes, approved construction of a new highway connecting the Great Smoky Mountains National Park with the Shenandoah National Park. H. Con. Res. 294, 111th Cong., 2nd Sess. (Sept. 22, 2010) (commemorating the 75th anniversary of the Blue Ridge Parkway and describing its creation). This highway became known as the Blue Ridge Parkway. Subsequently, in 1936, Congress authorized the Secretary "to approve and accept, on behalf of the United States, title to any lands and interests in land heretofore or hereafter conveyed to the United States" to create the new highway. 16 U.S.C. §§ 460a-1, a-2. The Secretary was also authorized "to acquire, by purchase or exchange, land and interests in land contiguous to the parkways" to "adjust ownership lines, and to eliminate hazardous crossings of and accesses to these parkways." 16 U.S.C. § 460a-5.

On October 6, 1937, the State Highway Commissioner of Virginia ("Highway Commissioner") notified Marcus and Myrtle Bolen that the Commonwealth of Virginia intended, out of necessity, to acquire two parcels of their land in fee simple for the construction of a section of the Blue Ridge Parkway. The two parcels comprised approximately 25.17 acres. (Dkt. No. 37-2). The notice specifically stated that the land was being acquired:

> Together with all right and interest of the said M.M. Bolen, Myrtle F. Bolen or others, their heirs or assigns, to build, construct, maintain or use any private drive or road on or over the above described tracts or parcels (Parcel No. 1 and Parcel No. 2), or other parkway lands, without the consent and approval of the State Highway Commissioner of Virginia or his assigns.

(Id.).

4

On January 13, 1938, the Highway Commissioner filed a petition with the Carroll County Circuit Court to condemn the two parcels because the Highway Commissioner had failed to reach an agreement with Marcus and Myrtle Bolen "as to what would be a just compensation for their interest in the land," (Dkt. No. 37-4, at 3), and informed Marcus and Myrtle Bolen of the Commonwealth's intention to judicially condemn the land, (Dkt. No. 37-3). In his petition before the Carroll County Circuit Court, the Highway Commissioner stated the two parcels were necessary for the "construction, reconstruction, alteration, maintenance, and repair of a portion of road embraced in the Blue Ridge Parkway." (Dkt. No. 37-4, at 3). The Highway Commissioner further stated "[t]hat the property and rights intended to be taken by these proceedings is the fee simple title to the strips or parcels of the defendants hereinabove described, **to-gether with all their right to access roads, ways or drives over the above de-scribed tracts or parcels of land**, without the consent and approval of the State Highway Commissioner or its assigns." (Dkt. No. 37-4, at 2-3) (emphasis added).

The Carroll County Circuit Court then appointed five commissioners to value the land. (Dkt. No. 37-5). It instructed the commissioners to "ascertain what will be just compensation for said lands, and award damages, if any, as may result to adjacent or other property of the owner thereof, or to the property of any other person, beyond the peculiar benefits that will accrue to such properties, respectively from the construction, reconstruction, alteration, beautification, scenic easement, maintenance and repair of the road to be built upon said lands, as described in the said petition." (Id.). The appointed commissioners submitted their findings to the Carroll County Circuit Court on February 11, 1938. The commissioners' report stated that "they went upon and viewed the lands described in the petition heretofore filed in this case." (Dkt. 37-6, at 1). They determined that $1,260.00 would "be a just compensation for the fee simple title to the

said lands described in the petition filed in said case" and $140 would be an appropriate award "for the damage done to the adjacent property of the owner...." (Id.).

Marcus and Myrtle Bolen, through their attorney, filed exceptions to the commissioners' findings, claiming that both the compensation for the two parcels and the compensation for the damage was "unfair, inadequate and unreasonable." (Dkt. No. 37-7, at 2). Their exceptions did not, however, claim any easement over the two parcels to be condemned. (Id.)

In response to Marcus and Myrtle Bolen's objections, the Carroll County Circuit Court appointed five new commissioners. The new commissioners determined that $1,750.00 would "be a just compensation for the fee simple title to the said lands described in the petition filed in said case" and $575 would be an appropriate award "for the damage done to the adjacent property of the owner...." (Dkt. No. 37-9, at 1). The second commissioners did not amend or alter in any way the land to be condemned as described in the petition. Marcus and Myrtle Bolen did not file any exceptions to the second commissioner's report, and after approximately 30 days Judge Draper of the Carroll County Circuit Court entered an order ratifying the new commissioner's report. (Dkt. No. 37-10, at 1).

The Commonwealth of Virginia conveyed to the United States of America, by general warranty deed dated May 18, 1938, the Bolen's condemned land, along with other parcels of land for the construction of the Blue Ridge Parkway. (Dkt. No. 37-11). Although this deed explicitly reserved several easements for private roads to and across the Blue Ridge Parkway, the deed did not reserve Agape's alleged easement to the Blue Ridge Parkway. (Id.).

### D. The Alleged Easement or Right of Access to the Blue Ridge Parkway

The Carroll County Circuit Court order, ratifying the second commissioners' report, is a three page document, signed on its cover page by Judge Draper, but not on either of the other two pages where the substance of the order is detailed. (Dkt. No. 37-10). On the first

6

substantive page of the order it says: "the Court doth approve, ratify and affirm the said report in all respects and doth so adjudge and order, and doth confirm unto the Commonwealth of Virginia, as provided by statute, free of all liens and encumbrances, the fee simple title to all that property belonging to M[arcus] and Myrtle Bolen, his wife, and described as follows...." (Id. at 1). The second page of the order, echoing the language of the petition, states:

> Together with all right and interest of the said M[arcus] Bolen, and
> Myrtle F. Bolen or others, their heirs or assigns, to build, construct,
> maintain or use any private drive or road on or over the above
> described tracts or parcels (Parcel No. 1 and Parcel No. 2), or other
> Parkway lands without the approval and consent of the State
> Highway Commissioner of Virginia or his assigns.

(Id., at 2). However, the above paragraph includes a handwritten addition following the words "Parkway lands," which states: "except one (1) access road way ten (10) feet wide with two (2) foot shoulders on the side at or near station 358." (Id.). The handwritten addition is anonymous and undated. (Id.).

The Carroll County Circuit Court's order was then entered into the Chancery Order Book and also into the Deed Book. The recorded Chancery Order contains the same handwritten addition, which is also undated and unsigned. (Dkt. 43-1). Similarly, the Deed Book also contains the handwritten addition, again undated and unsigned. (Dkt. No. 43-2). These three documents are the only documents describing Agape's alleged easement to access the Blue Ridge Parkway. The easement is not referenced in any other deed in Agape's chain of title and nor, as stated above, was it included in the deed from the Commonwealth to the United States of America.

### E. Timeline of Events

Finally, by way of summary, the Court provides a chronology of the relevant events.

7

| | |
|---|---|
| January 13, 1938 | Commonwealth files petition for condemnation of Bolen land. |
| February 11, 1938 | First commissioners' report setting compensation at $1400 filed. |
| March 18, 1938 | Commonwealth orders payment of $1400 to Carroll County Circuit Court. |
| April 30, 1938 | Second commissioners' report filed increasing compensation to $2325. |
| May 10, 1938 | Commonwealth orders payment of $925 to Carroll County Circuit Court, to account for increased compensation. |
| May 18, 1938 | General warranty deed from the Commonwealth to the United States conveying the Bolen land, without any easement, drafted. |
| May 26, 1938 | Clerk for the Carroll County Circuit Court deposited funds paid by the Commonwealth into Bolens' bank account at the Carroll County Bank. |
| Undated | Order of Judge Draper ratifying the commissioners' report and allegedly adding the interlineation reserving an easement to the Blue Ridge Parkway. |
| July 2, 1938 | Judge Draper's order is entered into the Chancery Order Book, with the interlineation. |
| July 13, 1938 | Judge Draper's order is entered into the Deed Book, with the interlineation. |
| September 9, 1938[5] | United States' general warranty deed recorded in the Deed Book, without any easement. |

### F. Use of the Easement to the Blue Ridge Parkway[6]

Sometime between 1950 and 1967, one of the Bolen predecessors in title, Mary W. Bolen, constructed a private driveway from her land to the Blue Ridge Parkway across land owned by the United States. This private driveway occupies the same land as the alleged

---

[5] The Government states this deed was recorded on June 1, 1938. (Dkt. No. 37, at 5). However, the certificate of the notary public indicates the notary's seal was affixed June 16, 1938. (Dkt. No. 37-11). The deed also states it was received in the Carroll County Circuit Court Clerk's Office on September 9, 1938. (Dkt. No. 69). These discrepancies are immaterial to the Court's decision.

[6] Neither the Government nor Agape has argued that they acquired title to the alleged easement to access the Blue Ridge Parkway through adverse possession. Thus, the Court takes no position on the merits of this argument.

8

easement. Beginning in 1967, the National Park Service ("NPS") granted Mary W. Bolen a special use permit ("SUP') for this private driveway.[7] This SUP was extended through May 31, 1983. (Dkt. No. 37-14). Additionally, there is evidence that the Government required SUPs from several other individuals in the Agape and Bolen chains of title, including Russell M. York (June 1, 1973 - May 31, 1983), and Thomas Y. Brintle (May 31, 1983 - approximately June 26, 1996). See (Dkt. No. 37, at 7-10).

## II. Standard of Review

Summary judgment is proper where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when a rational factfinder, considering the evidence in the summary judgment record, could find in favor of the non-moving party. Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009). In considering a motion for summary judgment, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). Thus, summary judgment should be entered if the Court finds, after a scrupulous review of the record, that no reasonable jury could return a verdict for the non-moving party. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 958 (4th Cir. 1996).

## III. Analysis

Agape alleges that it is legally entitled to easements across the Brintle and Bolen Parcels and an easement giving it access to the Blue Ridge Parkway. These easements in combination would make it possible for vehicles to exit the Blue Ridge Parkway and drive to Agape's property. All Defendants refute the existence of the easements across their respective tracts of

---

[7] The SUP provides that it was granted because "the permittee's land was deprived of access to SR C-778 after Parkway Section I-V right-of-way was acquired and the public road was relocated to facilitate crossing of the Parkway motor road." (Dkt. No. 37-13).

9

land. The Court addresses the existence of the easement accessing the Blue Ridge Parkway first because its existence can be resolved through statutory construction, ~~thus avoiding consideration of the facts~~. If Agape does not have an easement accessing the Blue Ridge Parkway the Brintle and Bolen Easements are also extinguished. <u>Atkisson v. Wexford Assocs.</u>, 493 S.E.2d 524 (Va. 1997) (holding that a property owner claiming an easement of ingress or egress must show the ability to cross every intervening property necessary to reach the ultimate destination for the easement to exist).[8] Having reviewed the record, the Court finds that Agape does not have an easement to the Blue Ridge Parkway and thus the Brintle and Bolen easements are also extinguished.

### A. Agape Cannot Prove Entitlement to an Easement or Right of Access to the Blue Ridge Parkway

Agape bears the burden of establishing an entitlement to the easement to access the Blue Ridge Parkway. <u>Mulford v. Walnut Hill Farm Grp., LLC</u>, 712 S.E.2d 468, 476-77 (Va. 2011). Thus, unless Agape can come forward with more than a mere scintilla of evidence indicating the existence of the purported easement, the Government is entitled to summary judgment. The determinative issues in this case are (1) when title vested in the Commonwealth and (2) how the scope of the title that vested is determined – on the basis of the petition or on the basis of the order entered by the Carroll County Circuit Court judge at the completion of the condemnation proceeding?

Agape argues that while "defeasible title vests in the Commonwealth upon recordation of the commissioner's certificate[,] ... absolute and indefeasible title does not vest in the Commonwealth until entry of the final order confirming the award [of compensation]." (Dkt. No. 68, at 3). Thus, since the Carroll County Circuit Court order confirming the award of

---

[8] <u>Atkisson</u> was abrogated on other grounds by <u>Siska Revocable Trust v. Milestone Dev., LLC</u>, 715 S.E.2d 21 (Va. 2011).

10

compensation added the handwritten interlineation reserving the easement, the title that vested was subject to the easement described in the interlineation.[9] To reach this result Agape construes the text of Va. Code § 4369, located in the title regarding eminent domain generally, as consistent with and supplementing Va. Code. § 1969j, located in the title regarding the state highway commission and system. Section 4369 provides that "[u]pon such payment [of the sum determined to be just compensation], either to the person entitled thereto, or into court, **and confirmation of the report**, the title to the part of the land and to the other property taken for which such compensation is allowed, **shall be absolutely vested** [in the Commonwealth]." (emphasis added). Section 1969j does not, however, use the term absolutely or explicitly require "confirmation of the report." Rather, § 1969j states:

> Upon the return of the report of the commissioners or viewers appointed in such proceedings the sum ascertained thereby as compensation and damages, if any, to the property owners, may be paid to the person or persons entitled thereto, or for them into court or to the clerk thereof, **upon which title to the property and rights condemned shall vest in the Commonwealth of Virginia in fee simple, or to such extent as may be prayed for in [the] petition**, and the commissioner shall have the right to enter upon such construction upon [sic] or use of the property and rights condemned as may be authorized by said report, provided the right of appeal from or review of said report on exception thereto is hereby given to the property owner, or to the commissioner, to the circuit court, on the question only of damages or compensation.

(emphasis added). The Government rejects this position, instead arguing the sections contradict one another and that reliance on the general statutory section, § 4369, is misplaced when a specific statutory section, § 1969j, controls the proceeding. Furthermore, the Government argues that giving controlling weight to the language of § 1969j is appropriate given that § 1969j provides "the rights of all persons affected shall be subjected to the general laws of this state, in

---

[9] Agape cites the Virginia Code of 1936, but the petition cites the Virginia Code of 1930 as the governing law. The Court has examined both versions of the Code and finds them to be substantially equivalent, if not identical, and thus this dispute is not determinative.

so far as the same may be applicable under the general purposes of this act, and **except as hereby altered or modified**." (emphasis added).

Under Virginia principles of statutory construction when statutes appear contradictory but are capable of harmonization courts must give effect to both statutes. Bd. of Supervisors v. Marshall, 214 S.E.2d 146, 150 (Va. 1975); see also Keys v. Shirley, 150 S.E. 401, 402 (1929) (listing, inter alia, §§ 1969j and 4369 as "pertinent" to deciding whether a condemnation proceeding may be dismissed on petitioner's motion after commissioners' report has been filed but judgment not yet paid). Thus, while this Court accepts Agape's interpretation that the two statutory sections can be viewed as supplementing one another, the Court rejects Agape's conclusion as to the meaning of the harmonized sections.

Indeed, neither § 1969j nor § 4369 provides any foundation for Agape's argument that the title that vests is the title contained in the Carroll County Circuit Court's order confirming the commissioners' report. Rather, the statutory scheme requires an entirely different conclusion. After review of the statutory scheme, the Court finds that although defeasible title vests in the Commonwealth as soon as compensation is paid into the Court, that title is only subject to defeasance under certain limited circumstances, all of which are provided by statute, and none of which include modification by the Carroll County Circuit Court order confirming the compensation set by the commissioners' report.

Defeasible title means "[a] title voidable on the occurrence of a contingency, but not void on its face."[10] Black's Law Dictionary (9th ed. 2009). In this context, defeasible title was

---

[10] Plaintiffs cite Home Ins. Co. of NY v. Dalis, 141 S.E.2d 721, 723-24 (Va. 1965), and Commonwealth Transp. Comm'r v. Klotz, Inc., 425 S.E.2d 508, 511-12 (Va. 1993), in support of their proposition that defeasible title is subject to alteration by the Circuit Court order. The Court first notes that both of these cases refer to Virginia Code sections that post-date the current action. Second, Dalis, concerned the question of who bore the risk of fire damage for buildings situated on land subject to condemnation proceedings, and nowhere in its opinion did the court hold that a circuit court may modify the scope of the title once compensation has been set in the commissioners' report. 141 S.E.2d at 723-24. Rather the issue of defeasible versus absolute title was raised to show that under defeasible

12

intended to permit the petitioner to dismiss the proceedings before any rights had vested, Keys, 150 S.E. at 402 (interpreting §§ 1969j, 4369, and 4387 and reversing circuit court decision dismissing petition after rights had vested), or to permit dismissal in the case where the commissioners ascertain just compensation but the petitioner fails to pay such compensation, Va. Code § 4387 ("If in any such proceeding, the amount or amounts ascertained by the commissioners as aforesaid be not paid either to the party entitled thereto, or into court, within three months from the date of the filing of the report of the commissioners, the proceedings shall, on the motion of the party condemning or of any defendant, be vacated and dismissed as to him....").

Additionally, Agape's interpretation that title could be altered on the basis of the language of the Carroll County Circuit Court's order confirming the commissioners' report runs contrary to the statutory scheme that requires the land being condemned be described with particularity in the petition and commissioners' report.[11] See Va. Code. §§ 4364, 4367, 4368.

Specifically, § 4364 requires that to initiate condemnation proceedings a petition be filed that "shall set forth the interest and estate intended to be taken in the land or other property." Furthermore, the section requires that "[t]here shall be filed with such petition a plat of the survey, with a profile showing the cuts and fills, trestles and bridges, and **a description of the land or other property which, or an interest or estate in which, is sought to be**

---

title the petitioner may abandon the proceedings. Id. at 724. Klotz is also distinguishable on its facts. Klotz concerned whether the Commissioner of Transportation may amend its condemnation petition where no agreement as to compensation had been reached prior to the petitioner instituting condemnation proceedings and prior to the commissioners ascertaining just compensation. The Virginia Supreme Court held that under these circumstances the Commissioner may amend the condemnation petition. 425 S.E.2d at 512. The Virginia Supreme Court, however, made no comment on whether the scope of the title may be altered after compensation has been set, which is the question before this Court. Indeed, the logical implication of the Virginia Supreme Court's rulings is that title may not be altered once compensation is set.

[11] The statutory scheme regarding condemnation lays out the procedures that must be followed—from the contents of the petition, duties of the commissioners, contents of the commissioners' report, to the timing of the termination of rights in the condemned property—all in specific detail. Virginia courts have held these statutes are to be strictly construed. Light v. Danville, 190 S.E. 276, 281 (Va. 1937).

13

**condemned....**" (emphasis added). Amendments to the petition are allowed under certain circumstances. See Richmond v. Thompson's Heirs, 81 S.E. 105, 107-08 (Va. 1914) (holding a petitioner cannot condemn a different interest than originally specified in the petition without amendment of the petition or consent of the defendants). Likewise, § 4367, which outlines the appointment process for and duties of the commissioners, states the commissioners are appointed "for the **purpose of ascertaining a just compensation for such lands**, or other property, or for such interest or estate therein, and awarding the damages, if any, resulting to the adjacent or other property of the owner...." (emphasis added). Section 4368 further provides that "[t]he commissioners, **after viewing the property and land which, or an interest or estate in which, is sought to be condemned** ... shall ascertain what will be a just compensation for the said property and land, or for such interest or estate therein **as is proposed to be taken....**" (emphasis added). Thus, sections 4364, 4367, and 4368 all require the land subject to condemnation be described with specificity.

Finally, § 4369, the provision that requires the circuit court to confirm the commissioners' report, makes no provision for the circuit court judge to alter the description of the land being condemned at this late stage of the proceeding.[12] Indeed, in light of the broad authority of the Commonwealth to condemn land and the need for the commissioners to accurately assess the value of the land at issue, it makes sense the legislature did not include this provision. The commissioners are charged with ascertaining just compensation for the property. Without an accurate description of the property the commissioners would be unable to determine just compensation and nor would the parties be able to determine whether they should request

---

[12] This appears especially telling in light of the fact that the legislature provided specifically for certain types of objections to the commissioners' report. See Va. Code § 4370 (noting that during the 30 day waiting period, for "good cause be shown against the report ... the court... may ... appoint other commissioners, and the matter may be proceeded in as before prescribed.").

14

the appointment of new commissioners if they took exception to the first commissioners' valuation of the land. This Court also notes that in light of the Commonwealth's almost unlimited power to condemn land for public purposes, and § 4371, which provides that during the pendency of condemnation proceedings a corporation or the state may enter into land and begin construction, it seems beyond reason that the statutory scheme intended to permit the kind of modification Agape urges is allowed in the Carroll County Circuit Court's order confirming the commissioners' report.

Thus, once the commissioners' report is filed in accordance with § 4369, the circuit court's confirmation of the report serves only to affirm the appropriateness of the compensation calculated and signify the conclusion of the condemnation proceedings. See Va. Code § 4374 ("After the payment of the amount of compensation and damages into court as hereinbefore prescribed, the interest or estate of the owner or owners which has been contemned, as aforesaid, shall terminate, and they shall have such interest or estate in the compensation or damages paid into court as they and in the property so taken or damaged ...."); Va. Code § 1969j ("provided the right of appeal from or review of said report on exception thereto is hereby given to the property owner, or to the commissioner, to the circuit court, on the question only of damages or compensation"); State Highway Comm'r v. Kreger, 105 S.E.217, 218 (Va. 1920) (quoting 1919 Va. Acts 57) ("[T]he right of appeal from or review of said report on exception thereto is hereby given to the property owner or to the commission, to the circuit court, on the question only of damages or compensation."). Nothing in the statutory language, the statutory scheme more generally, or common sense suggests that the legislature intended for the scope of the title vesting to be determined by anything other than the title described in the petition and referenced in the commissioners' report.

15

In the present case, the land described in the petition did not include any easement. Nor was there an easement included in the description of the land to be surveyed by the commissioners. Nor was there an easement included in the reference to the description of the land in the first commissioners' report. Nor did the attorneys for Marcus and Myrtle Bolen raise the issue of an easement in the exceptions they filed to the first commissioners' report. Nor was there an easement included in the reference to the description of the land in the second commissioners' report.[13] And finally, there was no description of the alleged easement in the description of the land conveyed by the Commonwealth to the United States of America, despite the fact that several similar easements were expressly reserved in that deed. Ultimately, it matters not what the Carroll County Circuit Court order stated because the scope of the title that vested in the Commonwealth was determined by the description of the land in the condemnation petition, which does not include the alleged easement. Thus, this Court concludes that based on the description of the land in the condemnation petition and as referenced in both of the commissioners' reports, no easement accessing the Blue Ridge Parkway was reserved.[14] The Commonwealth took title to the land without any easements when it paid the compensation ascertained to be just by the first commissioners' report into the Carroll County Circuit Court on

---

[13] The Court notes that the total amount of compensation was increased by $925 between the issuance of the first commissioners' report and the second commissioners' report. Had there been any discussion of or intention to reserve the purported easement, one would not expect to see the compensation increase because reservation of the alleged easement would have increased, rather than decreased, the value of the land retained by the Bolens.

[14] Agape argues that this Court must accept the Carroll County Circuit Court order as written and may not question it because to do so would be an impermissible collateral attack. However, this Court's statutory interpretation of the relevant sections of the Virginia Code does not constitute a collateral attack and does not endanger the conclusiveness of the order. See Robart Wood & Wire Prods. Corp. v. Namaco Indus., Inc., 797 F.2d 176, 178 (4th Cir. 1986) (citing Milwaukee Cnty. v. White Co., 296 U.S. 268 (1935) (stating the purpose of rules preventing collateral attack "is to establish, throughout the federal system the salutary principle of the common law that once litigation is pursued to judgment, that judgment shall be as conclusive of the rights of the parties in every other court as in the court where the judgment was rendered.")).

16

or about March 18, 1938.[15] The Commonwealth then conveyed the land to the United States of America, for construction of the Blue Ridge Parkway, without Agape's alleged easement.

### B. Agape's Motion to Exclude is Moot and Agape is Not Entitled to Attorneys' Fees

Agape argues that this Court may not consider two maps brought by the Government to the initial hearing on the cross motions for summary judgment. That hearing was continued, at Agape's request, to allow Agape to contest the introduction of the maps. The Government has not introduced the two maps into evidence, (Dkt. No. 63), and this Court has not considered the maps in deciding the cross motions for summary judgment. Thus, Agape's request to exclude consideration of the maps is denied as moot.

Agape also asks for an award of attorneys' fees in the amount of $5,455.50 for legal fees and costs incurred in the process of challenging the introduction of the two maps and as a result of the postponement of the hearing. (Dkt. Nos. 62, 70). Because Agape provides no support for its alleged entitlement to such an award and because the Court finds that Agape is neither a prevailing party under 28 U.S.C. § 2412 nor has any entitlement to fees under Fed. R. Civ. P. 11(c), the Court denies Agape's request for attorneys' fees.

### IV. Conclusion

Viewing all the evidence in the light most favorable to Agape, the Court finds that Agape does not have any entitlement to an easement to access the Blue Ridge Parkway and, consequently, Agape's easements across the Brintle and Bolen lands are also extinguished.[16] Accordingly, the Government's motion for summary judgment is **GRANTED**, the Brintle and

---

[15] Agape argues that the earliest date the Government can prove it paid the compensation into the Carroll County Circuit Court is May 26, 1938. This is the date when the funds were deposited into the Bolen's bank account. This is, however, unsupported by the facts. The Government's evidence, orders for payment forms, explicitly state "[t]his form to be attached to check when paid" thereby indicating actual payment.

[16] The parties make several additional arguments in their briefs, which the Court has reviewed and considered. However, because none of these arguments change the outcome of the above legal analysis or the Court's ruling, they are not addressed herein.

17

Bolen Defendants' motion for summary judgment is **GRANTED**, and Agape's motions for summary judgment are **DENIED**. Furthermore, Agape's motion to exclude is **DENIED**. An appropriate order shall issue this day.

ENTER: This 16th day of May, 2012

*/s/ James C. Turk*
Senior United States District Judge